UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

JUN 0 8 2005

~~~~~ CLERK

| | |
|---|---|
| HAROLD RUNNINGBIRD, ) | CIV. 03-4018-RHB |
| Plaintiff, ) | |
| vs. ) | MEMORANDUM OPINION AND JUDGMENT |
| DOUGLAS WEBER, Warden, South Dakota State Penitentiary; DENNIS BLOCK, Associate Warden, South Dakota State Penitentiary; JUSTIN BAUER, Officer, ) | |
| Defendants. ) | |

Plaintiff, Harold Runningbird, brings this action under 42 U.S.C. § 1983. Plaintiff alleges in this action that defendants have violated his right to free exercise of religion.

## BACKGROUND

Plaintiff alleges that defendants have violated his right to free exercise of religion as a member of the Native American Church. Specifically, plaintiff alleges that he only receives tobacco, which is an essential part of prayer in the Native American Church, once a week - two tablespoons for the pipe and one-fourth cup for the making of tobacco ties. Plaintiff alleges that this ceremony normally requires a whole can of tobacco. Plaintiff also alleges that the time for which they are allowed to sweat is not enough. He states that "[c]eremonies are not allowed for more than two hours for sweat. This N[ative] A[merican] Church ceremonie [sic] is an all nut [sic] ceremony[.]" Plaintiff further alleges his rights are violated by the institution regulations which prohibit him from possessing a buffalo skull, pipes, tobacco, and peyote in his cell. Plaintiff is allowed access to all of these items, with the exception of the peyote. Plaintiff's final allegation is that the authorities do not allow ceremonies to be performed outdoors.

1

Previously, the Court granted summary judgment for defendants finding that plaintiff was seeking only monetary damages which are not recoverable against defendants in their official capacities. The Eighth Circuit Court of Appeals affirmed in part and reversed in part and remanded the matter to this Court for determination as to whether defendants, in their official and individual capacities, are entitled to qualified immunity and for a determination as to whether the complaint should be construed as requesting injunctive relief.

Upon remand, plaintiff has moved the Court to allow him to amend his complaint to add a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Defendants oppose the motion.

## DISCUSSION

### A. Standards of Review

#### 1. Qualified Immunity

Defendants contend that they are immune from suit based on the doctrine of qualified immunity. The United States Supreme Court has held that "[a] court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991)). "[T]he next, sequential step is to ask whether the right was clearly established." Saucier, 533 U.S. at 201, 121 S. Ct. at 2156. "In order for a person to have a clearly established right, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Maher v. Harper, 12 F.3d 783, 785 (8$^{th}$ Cir. 1994) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987)). Furthermore,

2

the United States Supreme Court has held that the courts must not frame the right too generally. Maher, 12 F.3d at 785. "Specifically, in making a free exercise claim under 42 U.S.C. § 1983, the inmate must establish both the existence of a sincerely held religious belief and the infringement upon that belief by the challenged act or regulation." Hayes v. Long, 72 F.3d 70, 73 (8th Cir. 1996) (citing Iron Eyes v. Henry, 907 F.2d 810 (8th Cir. 1990); Hill v. Blackwell, 774 F.2d 338, 342-43 (8th Cir. 1985)).

2.     **The Turner Test**

If the doctrine of qualified immunity is not applicable, the Court may review the regulations to determine if plaintiff's constitutional rights have been violated. "'[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" Hamilton v. Schriro, 74 F.3d 1545, 1550 (8th Cir. 1996) (quoting Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 2260, 96 L. Ed. 2d 64 (1987)). "Several factors are to be considered when evaluating the reasonableness of a prison regulation: (1) whether there is a valid, rational connection between the regulation and the asserted governmental interest; (2) whether alternative means for exercising the right remain open to the prisoner; (3) the impact of the regulation on prison staff, other inmates, and the allocation of prison resources; and (4) the availability of ready alternatives to the regulation." Hamilton, 74 F.3d at 1551 (citing Turner, 482 U.S. at 89-91, 107 S. Ct. at 2261-63).

3.     **Religious Land Use and Institutionalized Persons Act**

Plaintiff wishes to amend his complaint to include a claim under RLUIPA which provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Persons Act (42 U.S.C. § 1997), even if the burden results from a rule of general applicability, unless the government demonstrates

3

that imposition of the burden on that person - (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "To constitute a substantial burden, the government policy or actions: 'must "significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion."'" Murphy v. Missouri Dep't of Corrections, 372 F.3d 979, 988 (8th Cir. 2004) (quoting Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997)).

Having set forth the standards, the Court now turns to plaintiff's claims.

**B.     Tobacco**

Plaintiff alleges that Bauer took plaintiff's ceremonial bag and prayer ties without permission. Plaintiff alleges that this property was stolen and therefore, he should be reimbursed for his loss. Plaintiff fails to acknowledge that it is the policy of the South Dakota State Penitentiary (SDSP) not to allow completed prayer ties in the inmate's cell and that if an inmate's ceremonial pouch is found to contain contraband, such as completed prayer ties, it shall be confiscated as well. The uncontroverted facts show that plaintiff's ceremonial pouch was confiscated because it contained completed tobacco ties in violation of the rules. Plaintiff frequently refers to this confiscation throughout his complaint and states that the ties were desecrated by throwing them away. However, the affidavit presented by the defendants shows that the ties are kept in a special room and that the confiscated ties have not been destroyed.

Plaintiff also alleges that he is given insufficient quantities of tobacco for prayer. There is no allegation that the need for tobacco to pray is not a sincerely held belief. Nor do defendants

argue that plaintiff's ability to pray is not infringed by the limitation of tobacco. The Court finds, however, that plaintiff does not have a clearly established right to possess tobacco in unlimited quantities against prison regulations. Since there is no clearly established constitutional right at issue, defendants are entitled to qualified immunity on this claim.

Even if defendants were not entitled to qualified immunity, the Court would still uphold the regulation limiting the amount of tobacco given to the inmates and where it can be utilized under the Turner test. As stated previously, a regulation may be valid if it is reasonably related to a legitimate penological interest. See Hamilton, 74 F.3d at 1550. In the instant case, the regulation limiting the amount of tobacco that may be used by inmates and the locations where that tobacco may be used is reasonably related to a legitimate penological interest - security. The affidavits submitted by defendants show that tobacco is contraband at SDSP and is secretly traded amongst the inmates. Maintaining security and order are of the utmost importance. "Institutional security is 'the most compelling governmental interest in a prison setting[. . . .]'" Murphy, 372 F.3d at 983 (quoting Goff v. Graves, 362 F.3d 543, 549 (8th Cir. 2004)). Furthermore, plaintiff is not precluded from practicing this principal of his religion altogether as he is allowed to attend religious ceremonies throughout the week. "The Supreme Court has made clear that an inmate who is an adherent of a minority religion must be afforded 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" Allen v. Toombs, 827 F.2d 563, 568 (9th Cir. 1987) (quoting Cruz v. Beto, 405 U.S. 319, 322, 92 S. Ct. 1079, 1081, 31 L. Ed. 2d 263 (1972)). "A prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so." Murphy, 372 F.3d at 983 (citing Hammons v. Saffle, 348 F.3d 1250, 1256 (10th Cir. 2003)). Defendants have provided plaintiff with sufficient

5

means for him to practice his religion.

Even under RLUIPA, plaintiff's claim would fail. As previously determined, defendants have provided plaintiff with reasonable opportunities to practice his religion. Plaintiff has had access to a variety of religious artifacts and has participated in a number of ceremonies. Plaintiff's religious beliefs, therefore, have not been substantially burdened. See, e.g., Brown v. Schuetzle, Case No. A1-03-127, 2005 WL 1030157, *8-*12 (D.N.D. May 4, 2005); Allen, 827 F.2d at 568-69. As a result, the Court further finds that allowing the amendment of the complaint would be futile as plaintiff's proposed amendment still fails to state a viable claim. See Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989); Fed. R. Civ. P. 15(a).

**C.    Medicine Man or Volunteer**

Plaintiff complains that the SDSP does not have a medicine man or any one to help Native American inmates and, therefore, all decisions that are made by SDSP do not "coincide with the sacred ways or protocol of the sacred ceremony and instruments." The Eighth Circuit has held that "[t]he Constitution does not . . . require that a religious advisor be provided for every sect in a penitentiary. . . . Nor is a prisoner entitled to insist on a religious advisor whose beliefs are completely congruent with his own." Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997) (citations omitted). As there is no violation of a constitutional right, defendants are entitled to qualified immunity.

**D.    Lowampi Ceremony**

Plaintiff protests the denial of a Lowampi Ceremony. First, in Plaintiff's request to SDSP officials to hold a Lowampi Ceremony, he states that "[t]his is not related to Native American Church . . . ." Affidavit of Dennis Block, Exhibit A. As there is no constitutional violation, defendants are entitled to qualified immunity. Moreover, to properly conduct a Lowampi

6

Ceremony requires a dark room without windows. Such a room presents safety and security risks. Affidavit of Block, ¶¶ 13-14. Thus, the regulation or determination not to have a Lowampi Ceremony is reasonably related to the penological interests of security and safety. Furthermore, as a Lowampi Ceremony is not related to plaintiff's religion, it cannot be said that there is a substantial burden on a central tenet of plaintiff's religion. As a result, the Court finds that this claim fails.

E.  **Female Guards**

Plaintiff complains that female guards occasionally conduct searches and touch sacred instruments and materials which is forbidden if the females are menstruating. Plaintiff also objects to the female guards observing sacred ceremonies. Plaintiff believes that these actions violate his constitutional rights.

Defendants argue that this is not a sincerely held belief by plaintiff or a central tenet of his religious beliefs. Regardless, the Court finds that plaintiff does not have a constitutional right to be searched or guarded only by male guards. See Timm v. Gunter, 917 F.2d 1093 (8$^{th}$ Cir. 1990). As a result, defendants are entitled to qualified immunity on this claim.

The Court further finds that the regulation allowing female guards to conduct searches and to observe the inmates is not unreasonable. In Madyun v. Franzen, 704 F.2d 954 (7$^{th}$ Cir. 1983), a male prisoner objected to frisk searches by female guards as violating his religious beliefs. The Seventh Circuit Court of Appeals stated that "[e]qual opportunity for women is a legal obligation of the state. In order to provide such opportunity in state prisons, women employed as guards must be allowed to perform the important tasks required of their male counterparts." Madyun, 704 F.2d at 960. The Eighth Circuit Court of Appeals adopted similar reasoning in Timm v. Gunter, 917 F. 2d 1093 (8$^{th}$ Cir. 1990), when it approved of female guards

7

performing pat down searches on male inmates. Like the pat down searches, "the connection between the prison regulation [allowing female guards to perform searches and to observe inmates] and the government interests justifying it (internal security and equal employment opportunities), is clear and requires no further explanation. . . . Further, accommodating a right to be free from opposite-sex searches would greatly burden guards and prison resources." Timm, 917 F.2d at 1100-01. Thus, under the Turner factors, the Court finds that it is not unreasonable to allow female guards to conduct searches or observe inmates.

F.  **Outdoor Sweats**

Plaintiff alleges that he is wrongfully denied outdoor access during sweats and that he is not given adequate time to perform the sweats. Plaintiff has requested that the sweats be held over a four-day time period. Affidavit of Block, ¶ 8. Block's affidavit states that "[a]ll sweats are held outdoors in the sweat lodge regardless of the weather conditions." Affidavit of Block, ¶ 35. As stated previously, all that is required is to give a prisoner a reasonable opportunity to practice his religion. See Allen, 827 F.2d at 568. Plaintiff does not have a constitutional right to sweat for four days. As a result, defendants are entitled to qualified immunity.

Furthermore, Block states that "[t]he two hour time limit on the sweats is enforced due to security and health concerns, as the ceremonies involve thirty inmates crowded into a small, very hot space for significant lengths of time." Affidavit of Block, ¶ 39. The Court finds based upon this affidavit that the regulation setting forth the times and length of the sweats is reasonable related to legitimate penological interests. As stated previously, "[a] prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so." Murphy, 372 F.3d at 983 (citing Hammons v. Saffle, 348 F.3d 1250, 1256 (10$^{th}$ Cir.

2003)). It is clear that plaintiff is unable to practice his beliefs as he prefers, however, he is afforded sufficient means for practicing the major tenets of his religion.

G. **Injunctive Relief**

The Eighth Circuit requested the Court review plaintiff's complaint and determine if he was seeking injunctive relief. Construing the complaint liberally, the Court finds that an injunction is not being sought and should not be issued. "In a preliminary injunction, a district court must balance four factors to determine whether injunctive relief is merited: 1) the threat of irreparable harm to the movant; 2) the balance between this harm and the harm to the nonmoving party should the injunction issue; 3) the likelihood of success on the merits; and 4) the public interest. . . . 'The standard is the same for a permanent injunction except that the movant must show actual success on the merits.'" Randolph v. Rodgers, 170 F.3d 850, 857 (8$^{th}$ Cir. 1999) (quoting Amoco Production Co. v. Village of Gambell, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987)).

Under the first prong, the plaintiff must show the threat of irreparable harm. Plaintiff believes that there is a lack of training of staff regarding the Native American religion because he is not allowed to fully perform the sacred ceremonies. The affidavit of Dennis Block indicates that both the uniformed and non-uniformed staff receive sensitivity training as part of their pre-service training. It also indicates that there is a business meeting held for all Native American inmates, that a volunteer is available to assist the inmates and the staff, and that the inmates have actually participated in promulgating the rules concerning how the sacred ceremonies are held. Affidavit of Block, ¶¶ 46, 23, 38. Based upon these facts, the Court finds that there is no threat of irreparable harm. Furthermore, if the injunction were granted, defendants would have to expend a great deal more manpower and money to cover extra events and properly guard the

inmates. This increase in the costs does not weigh in favor of the public interest, especially considering that plaintiff has been provided reasonable opportunities to participate in his religion. As a result, the Court finds that an injunction should not issue.

**H.    Subsequent Claims**

Since the filing of his complaint and the remand by the Eighth Circuit, plaintiff has complained to the court of a lack of access to the legal library. The Eighth Circuit has held that "[t]he Constitution does not require a state to 'enable [a] prisoner to discover grievances, and to litigate effectively once in court.'" Sabers v. Delano, 100 F.2d 82, 84 (8th Cir. 1996) (quoting Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 2181, 135 L. Ed. 2d 606 (1996)). Plaintiff must show a cognizable injury in order to proceed on such a claim. See id. The Court finds that the lack of access to the law library has not hindered plaintiff's presentation of his claims.

Plaintiff has also alleged that defendants have retaliated against him for commencing this action. "Prison officials may not retaliate against an inmate for filing legal actions in the exercise of his constitutional right of access to the courts." Goff v. Burton, 7 F.3d 734, 736 (8th Cir. 1994). Plaintiff, however, does not indicate how officials have retaliated against him other than lodging the same allegations set forth in the complaint. As a result, the Court finds that plaintiff has not stated a claim upon which relief may be granted. Accordingly, it is hereby

ORDERED that judgment shall be entered in favor of defendants and against plaintiff.

IT IS FURTHER ORDERED that the motion to extend the time to amend the complaint (Docket #67) is denied.

IT IS FURTHER ORDERED that plaintiff's motion to amend the complaint (Docket #69) is denied.

IT IS FURTHER ORDERED that plaintiff's motion for preliminary injunction (Docket

#77) is denied.

IT IS FURTHER ORDERED that plaintiff's motion for discovery (Docket #84) is denied.

IT IS FURTHER ORDERED that defendants' motion to strike (Docket #81) is denied.

IT IS FURTHER ORDERED that plaintiff remains obligated to pay the filing fee in its entirety.

IT IS FURTHER ORDERED pursuant to the mandate issued by the Eighth Circuit Court of Appeals that plaintiff additionally owes $255 in filing fees for his March 8, 2004, appeal. This fee shall be added on to the amount currently owed by plaintiff and may be made in installments pursuant to the Order dated June 24, 2003, which granted plaintiff in forma pauperis status.

Dated this 8th day of June, 2005.

BY THE COURT:

*/s/ Richard H. Battey*
RICHARD H. BATTEY
UNITED STATES DISTRICT JUDGE